**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRY BROWN,** | : | **CIVIL ACTION NO. 1:06-CV-01016** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **LOUIS S. FOLINO, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is a petition for writ of habeas corpus pursuant to
28 U.S.C. § 2254, filed by petitioner Terry Brown ("Brown"), an inmate currently
incarcerated at the State Correctional Institution at Greene ("SCI-Greene") in
Waynesburg, Pennsylvania.  (Doc. 1.)  Brown is challenging his state sentence in the
Court of Common Pleas for Bradford County ("Bradford County trial court" or
"trial court").  For the reasons that follow, the petition will be denied.

**I.    <u>Statement of Facts</u>**

The relevant procedural history in this case is complex, involving several
convictions and sentences in both Bradford and Luzerne counties for various
offenses stemming from separate incidents.  In May 1994, following a jury trial in
Bradford County under case number 92-CR-511, Brown was convicted of unsworn
falsification to authorities, <u>see</u> 18 PA.C.S.A. § 4904; retail theft, <u>see</u> 18 PA.C.S.A. §
3929; and, direct criminal contempt, <u>see</u> 42 PA.C.S.A. § 4132.  On June 12, 1995, the
trial court sentenced Brown to a term of imprisonment for a period not less than

eleven (11) months, fourteen (14) days and not more than twenty-four (24) months for unsworn falsification to authorities; a period not less than thirty-two (32) days and not more than ninety (90) days for retail theft; and, a period not less than three (3) months and not more than six (6) months for direct criminal contempt.  The trial court ordered those sentences to be served consecutively to each other, resulting in a total sentence of not less than fifteen (15) months, fifteen (15) days, and not more than thirty-six (36) months.

The Bradford County trial court also sentenced Brown on June 12, 1995, on another set of convictions under a separate case number, 93-CR-347.  Under 93-CR-347, on June 7, 1995, following a jury trial, Brown was convicted of driving while under the influence of alcohol or controlled substance ("DUI"), see 75 Pa.C.S.A. § 3731, and possession of small amount of marijuana, see 35 P.S. § 780-113(a)(31).[1] At the June 12, 1995, sentencing hearing, under case number 93-CR-347, the trial court sentenced Brown to a term of imprisonment for a period not less than eleven (11) months and not more than twenty-four (24) months for the DUI, and a period of not less than fourteen (14) days and not more than thirty (30) days for possession of marijuana.  The trial court ordered those sentences to be served consecutively to each other, resulting in a total sentence of not less than seventeen (17) months, fourteen (14) days, and not more than thirty-seven (37) months.  The trial court also

---

[1] Previously, Brown had been found guilty of two counts of direct criminal contempt, see 42 Pa.C.S.A. § 4132, separate from the contempt charges filed in case number 92-CR-511, and sentenced to a period of imprisonment of not less than three (3) months and not more than six (6) months.

ordered this total sentence to be served consecutively to the sentences imposed under case number 92-CR-511, thus bringing Brown's total aggregate sentence in case numbers 92-CR-511 and 93-CR-347 to a term of imprisonment of not less than thirty-three (33) months and not more than seventy (70) months. (See Doc. 17-2 at 95.)

Approximately eight months later, Brown entered a guilty plea to charges of resisting arrest, see 18 PA.C.S.A § 5104, and recklessly endangering another person, see 18 PA.C.S.A. § 2705, in the Bradford Country trial court under another case number, 95-CR-351. On February 20, 1996, the trial court sentenced Brown on those convictions to a term of imprisonment for a period of not less than three (3) months and not more than twelve (12) months for resisting arrest, and a period of not less than eleven (11) months and not more than twenty-four (24) months for recklessly endangering another person. The trial court ordered these sentences to be served consecutively to each other, and consecutive to the sentences imposed under case numbers 92-CR-511 and 93-CR-347, thus bringing Brown's total aggregate sentence on all three sentences in Bradford County to a term of imprisonment of not less than forty-seven (47) months and not more than one-hundred and six (106) months.

While serving the sentences imposed in Bradford County, on June 24, 1999,[2] Brown entered another guilty plea and was sentenced in Luzerne County under case number 98-CP-560 for several crimes committed in that county.[3]  The Luzerne County trial court sentenced Brown on all counts to a term of imprisonment of not less than six (6) years and not more than twelve (12) years.  The record shows that the Luzerne County trial court imposed the sentence for aggravated assault to run consecutively to the Bradford County sentences, resulting in a total aggregate maximum sentence not expiring until January 5, 2015.  (Doc. 17-2 at 17 & 17-3 at 11-14.)

Although these sentences are pertinent to the court's disposition of the instant petition, this matter involves only a challenge to Brown's conviction and sentence under Bradford County case number 93-CR-347.  As set forth above, in case number 93-CR-347 Brown was charged with DUI and possession of marijuana.

---

[2]  Prior to this June 24, 1999, sentencing, Brown was also sentenced in the United States District Court for the Middle District of Pennsylvania on February 26, 1999, on two counts of possession of a firearm and ammunition by a felon, see 18 U.S.C. §§ 922(g) and 924(a).  The federal district court sentenced Brown to a term of imprisonment of three hundred (300) months on each count, to be served concurrently.  (See 3:96-CR-00259.)  The court also ordered these sentences to be served concurrently to the sentences ordered in Bradford County case numbers 92-CR-511, 93-CR-347, and 95-CR-351.  The federal sentence, however, is not at issue in the instant case.

[3]  Brown entered a plea of guilty to charges on the following criminal counts: two counts of aggravated assault, see 18 PA.C.S.A. § 2702(A)(1); two counts of robbery, see 18 PA.C.S.A. §§ 3701(a)(1)(ii),(iii); three counts of theft, see 18 PA.C.S.A. § 3921(a); escape, see 18 PA.C.S.A. § 5121(a); terroristic threats, see 18 PA.C.S.A. § 2706; unlawful restraint, see 18 PA.C.S.A. § 2902(a)(1); simple assault, see 18 PA.C.S.A. § 2701(a)(1); and, reckless endangerment, see 18 PA.C.S.A. § 2705.

4

The record reflects that prior to trial Brown elected to proceed to trial <u>pro</u> <u>se</u>.  (<u>See</u> Doc. 17-5 at 13-14.)[4]  Thereafter, the trial commenced on June 5, 1995, initially with <u>voir</u> <u>dire</u>, with Brown proceeding <u>pro</u> <u>se</u>.[5]

During the Commonwealth's <u>voir</u> <u>dire</u>, the district attorney asked the prospective jurors as a whole if any of them had personal knowledge about Brown or the pending case.  Prospective juror number twelve (12), Dorrance Sampson, responded and the two had the following exchange:

> [District attorney]:  Okay, Mr. Sampson, have you heard something about this particular case?

---

[4]  In the instant petition Brown does not challenge his waiver of the right to counsel or standby counsel for the trial on Bradford County case number 93-CR-347.

[5]  Prior to the prospective jury panel entering the courtroom, the trial court again questioned Brown on his waiver of the right to counsel.  (<u>See</u> Doc. 17-5 at 8-9.)  Specifically, the court and Brown had the following exchange:

> Trial court:    I want you to understand . . . , as I told you last week that I can't give you any special consideration because you're not a lawyer and that you're representing yourself.  I will have to conduct this trial as I would if there was a lawyer representing you.
>                               * * *
>                 I have to rule on [objections or motions] just as if you were a lawyer . . . and understand all the rules and procedures that a lawyer would.  Do you understand that?
>
> Brown:          Yes, sir.

(<u>Id</u>.)

Juror 12:                    Yes, I have.  I heard it, when it happened, I heard it
                             on the scanner, and I personally know Terry,
                             himself.

[District attorney]:  Okay.  That's where your knowledge about this
                             incident comes from?  From what you heard over
                             the scanner?

Juror 12:                    Well, I heard a lot of, y'know, from word of mouth
                             too, around -

[District attorney]:  Okay, - Mr. Sampson, the things that you've heard
                             about this case, or the things that you heard, or you
                             may know about [Brown], would that interfere with
                             your ability to be a fair and impartial juror and
                             judge this case just based on the facts represented
                             in court?

Juror 12:                    It might be, yeah.  Cause I, I know him real good.

[District attorney]:  All right.

Juror 12:                    I knew a lot about him and I know him real, - pretty
                             good.

[District attorney]:  All right.  And do you think that your knowledge of,
                             or contact with, [Brown], would make it impossible
                             for you to judge this case based just on what comes
                             from the witness stand?

Juror 12:                    I think so, yeah, I do.

(Doc. 17-5 at 18-19.)  Later, the Commonwealth made the following request of the

prospective jurors: "Would those of you please put your hand up, who both know of

[Brown] and we haven't specifically discussed your knowledge of [Brown], aside

from the particular facts and circumstances of the case that we dealt with in the last

round of questions."  (Doc. 17-5 at 31.)  Again, Sampson responded that he knew

Brown.  (Id.)  Finally, before concluding the Commonwealth's portion of voir dire,

the district attorney made the following statement to all prospective jurors:

> [B]efore I conclude, I want to give each of you an opportunity, if there
> was some question that was asked, and y'know, five questions, or five
> minutes later, the light went off in your head and you thought to
> yourself, maybe I should have put my hand up.
>                              * * *
> [I]f there's some reason in your mind you think you couldn't be a fair
> and impartial juror, and I haven't asked the right questions to trigger a
> response for that reason, or based on that reason, this is your
> opportunity to purge that burning desire to say whatever it is you
> think you may need to say.

(Doc. 17-5 at 64.)  Sampson did not respond to this line of questioning by the district

attorney.

Brown then conducted his portion of voir dire.  (See Doc. 17-5 at 69-79.)

However, Brown did not question Sampson further regarding his knowledge of

Brown or his case.  In fact, he did not question him at all.  Upon conclusion of his

voir dire, Brown challenged a number of jurors for cause, but did not include

Sampson in those challenges.  Further, Brown did not seek to use a peremptory

challenge to strike Sampson.  The district attorney did not seek to exclude

Sampson, who subsequently was named as juror number five (5) for the trial.

On June 7, 1995, Brown was found guilty of DUI and possession of marijuana.

Following his sentencing on June 12, 1995, Brown filed a motion to modify the

sentence, which was denied by the trial court on July 5, 1995.  Brown also filed with

the trial court a petition for allowance of appeal nunc pro tunc, which was denied

following a hearing, on November 29, 1995.  Brown again filed a motion to modify

his sentence on August 12, 1996, which was denied on August 13, 1996.  The

Superior Court of Pennsylvania dismissed Brown's appeal from that denial on

November 14, 1996.

On December 24, 2003, Brown filed a <u>pro</u> <u>se</u> motion for post-conviction

collateral relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42

PA.C.S.A. § 9541, *et seq*., in the Bradford County Court of Common Pleas.  Claiming

an exception to the time for filing such a petition under 42 PA.C.S.A. § 9545(b)(1)(ii),[6]

Brown asserted that he learned for the first time on December 1, 2003, that juror

number 5, Sampson, had a bias against him at the time of jury selection in his trial,

---

[6]  42 PA.C.S.A. § 9545(b)(1)(ii) provides,

(b) Time for filing petition. - -
  (1) Any petition under this subchapter, including a second or
successive petition, shall be filed within one year of the date the
judgment becomes final, unless the petition alleges and the petitioner
proves that:
                    * * *
   (ii) the facts upon which the claim is predicated were unknown to
the petitioner and could not have been ascertained by the exercise of
due diligence.

stemming from a traffic accident involving Brown's father and Sampson's son.[7]  He

contended that because Sampson did not divulge his prejudice against Brown at

the time of jury selection, Brown was denied a fair trial by an impartial jury under

the United States and Pennsylvania constitutions.

The trial court appointed counsel, and an amended PCRA petition was filed

on February 4, 2004.  The Commonwealth filed a motion to dismiss the PCRA

petition, contending that the maximum sentence applicable to case number 93-CR-

347 had already been served, thus, under 42 PA.C.S.A. § 9543(a)(1),[8] Brown was not

---

[7] In his PCRA petition, Brown avers that on November 18, 2003, Richard Brown, presumably a relative of the petitioner, informed him that he had overheard a Mr. Sampson discussing Brown's case with a group of people.  According to Richard Brown, Sampson stated that he had wanted to be selected as a juror in Brown's trial in order to vote guilty so that Brown would be sent to jail.  (Doc. 17-3 at 1-2.)  After receiving a copy of the juror list verifying that Sampson was juror 5 in his trial, Brown obtained a newspaper article detailing a traffic accident that occurred prior to his trial and involved his father, Charles Brown, and family and acquaintances of Sampson.  (Id.)  According to the article, Charles Brown caused a collision between his tractor and an automobile carrying Sampson's son and several friends.  (Id.)  Three passengers died, including the pregnant girlfriend of Sampson's son.  (Id.)  Brown purportedly gathered all this information by December 1, 2003.

[8] 42 PA.C.S.A. § 9543(a)(1) provides, in pertinent part,

(a) General rule. - - To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
 (1) That the petitioner has been convicted of a crime under the law of this Commonwealth and is at the time relief is granted:
    (i) currently serving a sentence of imprisonment, probation or parole for the crime.

42 PA.C.S.A. § 9543(a)(1)(i).

a PCRA petitioner who, at the time relief could be granted, is "currently serving a sentence of imprisonment" for a conviction under case number 93-CR-347.

   After notifying the parties that it intended to dismiss the amended petition, the PCRA court entered an order of dismissal on December 7, 2004.  (Doc. 17-3 at 26.)  On January 19, 2005, the trial court issued a memorandum opinion in response to Brown's timely statement of matters complained of on appeal pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.  (Doc. 17-2 at 16-19.)  The PCRA court did not address the merits of Brown's PCRA petition, however, because it agreed with the Commonwealth that, for purposes of eligibility for relief under 42 PA.C.S.A. § 9543(a)(1), Brown was not serving a sentence for the crimes under case number 93-CR-347.  Consequently, Brown pursued on appeal the issue of whether he was still serving his sentence for his conviction under 93-CR-347.[9]  He further argued that the PCRA should be construed to permit him to challenge his

---

   [9]  Brown's specific issues raised before the superior court were as follows:

1.    Does section 9543(a) subsection (1) of the Post-Conviction Relief Act, in it's [sic] application in this case, preclude relief to the Appellant?

                              * * *

2.    Was the sentence, which the Appellant sought to have set aside by way of a post-conviction petition, still being served at the time the Trial Court dismissed the said petition?

                              * * *

3.    Did section 9543(a) section (1), by way of the Court's application of said subsection, conflict with the Appellant's State and Federal Constitutional Rights and Federal Statutory Rights?

(Doc. 17-2 at 74).

conviction on the claim that he was denied a trial by an impartial jury.  (Doc. 17-2 at

88.)  The superior court affirmed the dismissal of the PCRA petition on July 28,

2005.  (Doc. 17-2 at 13-15.)  Brown filed a petition for allowance of appeal.  (Doc. 17-2

at 3-12.)  On March 10, 2006, the Pennsylvania Supreme Court denied allocatur.

(Doc. 17-2 at 2.)  Brown filed the instant federal habeas petition on May 18, 2006.

(Doc. 1.)

## II.    **Claim Presented in Federal Petition**

In the instant petition, Brown raises the following issue: "Whether petitioner

was denied his constitutional due process rights to a fair trial by a panel of impartial

jurors?"  (Doc. 2 at 6.)  He contends that he received an unfair trial because juror

number 5, Sampson, had specific knowledge of Brown and his family members

which tainted the jury deliberations and caused a guilty verdict in his case.  Brown

claims that Sampson's deliberate concealment of a bias against Brown, stemming

from a fatal traffic accident involving Brown's father and Sampson's son, warrants a

new trial.  Because this evidence of bias was not discovered by Brown until

December 1, 2003, Brown argues, his habeas petition filed in this court is subject to statutory and equitable tolling under 28 U.S.C. § 2244(d)(1)(D).[10]

Brown raised this issue in his PCRA petition filed on December 24, 2003. (Doc. 17-2 at 99-100, Doc. 17-3 at 1-7.)  As set forth above, the PCRA court denied his petition because it agreed with the Commonwealth that Brown was not serving a sentence for the crimes under 93-CR-347 which his PCRA petition sought to challenge.  Brown pursued the issue of whether he received a fair trial in PCRA appellate proceedings, though it was predicated on the underlying issue of whether he had fully served his sentence for the conviction under 93-CR-347 by the time he filed his PCRA motion in December 2003.

The state courts did not reach the issue of whether Brown received a fair trial due to the determination that Brown had fully served his sentence on his conviction under 93-CR-347.  The PCRA court concluded that Brown's sentence under 93-CR-347 expired no later than July 1998.  Hence, his PCRA petition filed in December 2003 was untimely; Brown was ineligible for PCRA relief because under 42 Pa.C.S.A. § 9543(a)(1)(i), Brown was not "currently serving a sentence of

---

[10]  28 U.S.C. § 2244(d)(1)(D) provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
* * *
 (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

imprisonment . . . for the crime." 42 Pa.C.S.A. § 9543(a)(1)(I).  The PCRA court did not accept Brown's argument that the Bradford County and Luzerne County consecutive sentences, once aggregated, should be treated as one sentence, and, therefore, he still had standing to challenge the sentence received under case number 93-CR-347.  The court, citing <u>Commonwealth v. Miller</u>, 770 A.2d 362 (Pa. Super. 2001), reasoned that consecutive sentences are automatically aggregated and treated as one sentence for purposes of calculation of parole only.

The court also rejected Brown's attempt to seek relief under <u>Garlotte v. Fordice</u>, 515 U.S. 39 (1995) (holding that a federal habeas petitioner who is challenging his state court sentence remains "in custody" under all his sentences until all are served, and, thus, may attack through a federal habeas petition the conviction underlying the sentence scheduled to run first in the series).  The PCRA court rejected the application of <u>Garlotte</u> because the court in <u>Garlotte</u> was interpreting a federal statute, 28 U.S.C. § 2254(a), rather than the PCRA, and, therefore, <u>Garlotte</u> was not relevant to a challenge under the PCRA.

Brown appealed the PCRA court's decision.  The superior court considered the issue and adopted the PCRA court opinion.  It stated:

The PCRA court opinion comprehensively discusses and properly disposes of the questions presented.  (See PCRA Court Opinion, dated January 19, 2005, at 2-4) (finding: (1) Appellant ineligible for PCRA relief because Appellant not presently incarcerated for crimes challenged in PCRA petition; (2) Appellant's case law regarding aggregation of consecutive sentences pertain to denial of parole, not PCRA relief; and (3) United States Supreme Court's interpretation of federal statute not applicable to Appellant's case).

(Doc. 17-2 at 13-15.)

III.   **Discussion**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also Estelle, 502 U.S. at 68; Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997).

A.   **Habeas Exhaustion Requirements**

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded in principles of comity in order to ensure that state courts have the initial opportunity

14

to review federal constitutional challenges to state convictions.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989).  Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits.  Id.

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted.  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989).  Although deemed exhausted, such claims are considered procedurally defaulted.  Coleman v. Thompson, 501 U.S. 722, 749 (1991); McCandless, 172 F.3d at 260; Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims.  See McCandless, 172 F.3d at 260; Coleman, 501

15

U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 F.3d at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.

In the instant case, the state courts refused to entertain Brown's PCRA petition because, under 42 Pa.C.S.A. § 9543(a)(1)(i), Brown was not serving a sentence for the crime which his December 2003 petition sought to challenge. This PCRA procedural rule barred Brown from pursuing his claim that he was denied a fair trial in state court. Accordingly, he has procedurally defaulted on this claim and the court may not consider the merits unless he establishes "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his default.

16

McCandless, 172 F.3d at 260.  After a review of the record, the court finds that

Brown has made no such showing.

Any claim to "cause and prejudice" or a "fundamental miscarriage of justice"

is rooted in the venire proceedings of Brown's Bradford County trial in June 1995 in

case number 93-CR-347.  Initially, the court notes that Brown elected to proceed to

trial pro se.  (See Doc. 17-5 at 13-14.)  Notably, Brown is not challenging in this court

his waiver of that right to counsel or standby counsel.

During the Commonwealth's voir dire, Brown was alerted to Sampson's

prejudice against him when Sampson indicated that he knew of Brown and that

knowledge could interfere with his ability to serve as a fair and impartial juror in

the case.  In fact, Sampson clearly stated that his knowledge and contact with

Brown would make it difficult if not impossible for him to judge the case solely on

what was presented at trial.  These statements signaled a red flag that put Brown

on notice of the need for further investigation into Sampson's bias.

Brown was subsequently afforded the opportunity to conduct his own voir

dire of Sampson and failed to do so.[11]  He had the opportunity to strike venire

_____

[11]  During the Commonwealth's voir dire, of the approximately forty-five (45)
potential jurors, ten (10) potential jurors claimed to have knowledge of Brown
and/or the case.  (See Doc. 17-5 at 15-34.)  When asked if any of them, or anyone
they knew, had been arrested for DUI or drug charges, twenty (20) potential jurors
responded affirmatively. (See Doc. 17-5 at 41-64.)  Of the seven (7) challenges for
cause presented by Brown, the trial court granted three (3). (See Doc. 17-5 at 85.)
Brown has not objected to the court's decision on those venire members.

members, yet failed to strike Sampson.[12]  That he learned in 2003 of the reasons for

Sampson's bias against him and the degree to which that bias may have affected the

outcome of his trial does not excuse Brown's failure to pursue the matter at the

time of jury selection.  And he demonstrated his ability to address such issues, by

challenging other potential jurors for cause and by exercising his peremptory

challenges.  In his reply to respondents' response to his habeas petition, Brown

provides reasoning for his failure to investigate the bias Sampson openly

demonstrated during <u>voir dire</u>.

---

[12]  Fundamentally, the court is troubled by the fact that the trial judge
allowed a prospective juror to serve in this case when the individual's responses to
the Commonwealth's inquiries raised serious questions as to his ability to serve
impartially.  The Pennsylvania Supreme Court has stated, "[t]he test of
disqualification [of a prospective juror] is the juror's ability and willingness to
eliminate the influence of his scruples and render a verdict according to the
evidence . . . ."  <u>Commonwealth v. DeHart</u>, 516 A.2d 656, 663 (Pa. 1986) (citations
omitted).  This determination is to be made by the trial judge based on the venire
member's answers and demeanor and will not be reversed absent a palpable abuse
of discretion.  <u>Id</u>.  <u>See</u> <u>also</u> <u>Commonwealth v. Wilson</u>, 672 A.2d 293, 299 (Pa. 1996)
("The decision on whether to disqualify is within the discretion of the trial court
and will not be reversed in the absence of a palpable abuse of discretion").  The
court does not condone the actions of the trial judge with respect to the venire
proceedings.  However, under the provisions of § 2254 the court cannot address the
merits of Brown's claim unless it determines that the information Brown
discovered in 2003 was truly newly-discovered evidence.  <u>See</u> 28 U.S.C. §
2244(d)(1)(D).  The court has determined, *infra*, that the information concerning
Sampson was not, in fact, new evidence.  Thus, the court is precluded from
addressing Brown's merits issue.  Stated otherwise, the trial judge's error cannot be
reached because Brown cannot clear the hurdle of demonstrating that his
procedural default is excusable due to "cause and prejudice" or a "fundamental
miscarriage of justice."

> When potential juror Dorrance Sampson, [sic] stated during <u>voir</u> <u>dire</u>
> that he had heard of the case and that he knew [Brown], it was not a
> serious concern because Mr. Sampson did not say that knowing
> [Brown] would work for or against [Brown], or for or against the
> Commonwealth.

(Doc. 23 at 4.)  Obviously, Brown formed an impression of this potential juror

during <u>voir</u> <u>dire</u> based upon Sampson's statements in open court.  Brown's

impression may have been erroneous.  At the time, Brown may have believed

Sampson's pretrial knowledge of Brown was either a neutral factor or favorable to

Brown's defense.  However, the fact that Brown misapprehended or simply ignored

Sampson's <u>voir</u> <u>dire</u> responses in 1995 does not metamorphose into newly-

discovered evidence in 2003.  Although the precise reasons for Sampson's bias may

not have been exposed in 1995, the statements reflecting bias were made in 1995.

Brown had the opportunity to make further inquiry and elected not to ask any

additional questions of Sampson, deeming his knowledge of Brown as "not a

serious concern."[13]

    In sum, Brown's  claim of newly-discovered evidence and resulting alleged

"cause and prejudice" or "fundamental miscarriage of justice" does not excuse his

procedural default.  Consequently, Brown is precluded from pursuing federal

habeas corpus relief with regard to this issue.

---

[13]  Brown did not raise this issue of the prejudice of Sampson at any point in
appellate proceedings prior to the filing of his PCRA motion in December 2003.

**IV.** **<u>Conclusion</u>**

Based on the foregoing determination that Brown's claim is procedurally

defaulted, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.


   <u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:      March 30, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRY BROWN,** | : | **CIVIL ACTION NO. 1:06-CV-01016** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **LOUIS S. FOLINO, et al.,** | : | |
| | : | |
| **Respondents** | : | |

## ORDER

AND NOW, this 30th day of March, 2007, upon consideration of the petition
for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying
memorandum, it is hereby ORDERED that:

1.    The petition for writ of habeas corpus (Doc. 1) is DENIED.

2.    The Clerk of Court is directed to CLOSE this case.

3.    There is no basis for the issuance of a certificate of appealability. See
      28 U.S.C. § 2253(c).

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge